UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | | |
|---|---|---|
| RANDY MACK and CHERYL FISCHBACH, as Guardians Ad Litem for GERALD MACK, an incapacitated person, and MARJORIE MACK, | ) ) ) ) ) ) | CIV. 09-5079-JLV |
| | ) | ORDER |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | |
| KEITH MARQUAND and SENIOR SECURITY ESTATE PLANS, INC. | ) ) ) ) | |
| Defendants. | ) | |

**FACTS AND PROCEDURAL BACKGROUND**

Plaintiffs ("Macks") filed their complaint in Circuit Court, Seventh Judicial Circuit, Pennington County, South Dakota, asserting a number of claims against the defendants, Keith Marquand, Senior Security Estate Plans, Inc. ("SSEP"), and OM Financial Life Insurance Company ("OM"), jointly and severally, including negligence, undue influence, breach of fiduciary duty, practicing law without a license, selling annuities insurance without a license, breach of professional responsibilities, intentional infliction of emotional distress, unjust enrichment, and negligent supervision. (Docket 1-1). The complaint alleges that defendant Marquand was an employee and agent of defendants SSEP and OM. Id. at ¶ 3. In that capacity, Marquand is alleged to have moved Macks' monies from a number

of investments into annuities contracts managed by OM. Id. at ¶ 14. Macks allege those transactions were detrimental to plaintiffs' best financial interests. Id. at ¶ 24. Defendants removed the case to federal district court pursuant to 28 U.S.C. §§ 1441 and 1146 (diversity of citizenship).

Marquand admits he is a shareholder of SSEP. (Docket 8, ¶ 4). While admitting to a business relationship with plaintiffs, Marquand denies any allegations of improper conduct. Id. at ¶ 27.

During the course of discovery, OM filed a motion to stay proceedings. (Docket 20). The basis for the motion to stay was OM's assertion that plaintiffs' claims were adjudicated and discharged as part of a settled action in United States District Court, Central District of California, in litigation captioned Negrete v. Fidelity and Guaranty Life Insurance Company, No. CV-05-6837-CAS-MANx ("Negrete"). Id.

On August 9, 2010, the Honorable Christina A. Snyder, United States District Judge for the Central District of California, conducted a show cause hearing which was attended by counsel for plaintiffs in this South Dakota proceeding. (Docket 31-1). The civil minutes of the hearing reflect the oral findings of the court. Id. Judge Snyder found that Macks owned three annuities which were included in the class action settlement agreement, thus making Macks members of the class. (Docket 31-1, p. 7). Judge Snyder denied Macks' motion to opt out of class member status. Id. at 10.

2

Judge Snyder's oral order of August 9, 2010, "preliminarily enjoins the Macks . . . from taking any action in their case[ ] presently pending in the District[ ] of South Dakota . . . without first giving notice to this Court."  Id. at 13.  Judge Snyder finally required Macks on September 13, 2010, to:

> SHOW CAUSE why they should not be enjoined from prosecuting, pursuing, or participating in any way in any action, proceeding, hearing, or other matter now pending or subsequently filed in any venue . . . including the Mack . . . litigation now . . . pending in the United States District Court for the District of South Dakota . . . relating to, referring to, or arising out of in any way the Release [sic] Claims . . . in the Settlement Agreement.

Id.  Those released claims, as defined in the Settlement Agreement, include:

> a. any and all past or present claims, complaints, or causes of action, allegations of liability, damages, restitution, equitable, legal or interest, demands or rights whether known or unknown,
>
> b. that concern, refer or relate to, or arise out of, in whole or in part, the offering of advice in any manner related to the Annuities, or the design, marketing, solicitation and sale of the Annuities, as well as the crediting of interest to policy accounts,
>
> c. including, but not limited to, all claims that were asserted in this Action, or that could have been asserted against OM before any court, arbitration panel, or regulatory or administrative agency based on or related to facts alleged in the complaint filed in this Action, whether or not brought directly, indirectly, on a representative basis, or otherwise including but not limited to, actions brought on behalf of Plaintiff and/or Class Members by any state or federal government officials or agencies.

(Docket 22-5, p. 58).

On August 24, 2010, this court entered an order staying the South Dakota proceedings. (Docket 32). Following completion of the Negrete court proceedings, this court required the parties to submit briefing on two issues. Id. Those issues were:

1. Whether these proceedings should continue against OM; and

2. Whether these proceedings should continue against Marquand and SSEP, separate from and independent of any decision of the Negrete court relating to OM.

Id. at 6.

On September 28, 2010, Judge Snyder entered an order enjoining class members Gerald and Marjorie Mack from pursuing litigation. Negrete at Docket 378. That order was filed on October 26, 2010. See Docket 36. On October 27, 2010, this court entered an order dismissing OM from plaintiffs' complaint and allowing plaintiffs to file a motion to amend complaint. (Docket 37). On November 1, 2010, plaintiffs filed a motion to amend complaint, together with a copy of the proposed amended complaint.[1] (Dockets 38 and 39-1).

The amended complaint removed the references to OM and the annuities which were the subject of the Negrete order. (Docket 44-1). Also removed were the OM associated causes of action–Count Five: Selling

---

[1] Plaintiffs filed a corrected amended complaint to properly include the allegations necessary for diversity jurisdiction of 28 U.S.C. § 1332. See Docket 44-1. All future references to the amended complaint will refer to Docket 44-1.

4

Annuities Insurance Without License; Count Eight: Unjust Enrichment; Count Eleven: Unfair Trade Practices; and Count Twelve: Interference With a Prospective Business Advantage.  Id.

Included in the amended complaint were allegations about Mr. Marquand's financial advice to Gerald Mack and Marjorie Mack (the "elder Macks") and his recommendation to place title to their home in a Revocable Living Trust (the "Macks' home allegations").  Id. at ¶¶ 26-30.  Included as a damage allegation was an additional paragraph relating to the Department of Social Services claiming Macks' home as an assessable asset for recovery of Medicaid expenses incurred for Gerald Mack's nursing home care.  Id. at ¶ 33.  Retained in the amended complaint from the original complaint and renumbered are the following causes of action:

    Count One:        Negligence;

    Count Two:        Undue Influence;

    Count Three:      Breach of Fiduciary Duty;

    Count Four:       Practicing Law Without a License;

    Count Five:       Breach of Professional Responsibilities;

    Count Six:        Intentional Infliction of Emotional Distress;

    Count Seven:     Negligent Supervision;

    Count Eight:      Fraud and Deceit; and

    Count Nine:       Civil Conspiracy.

Id., *passim.*

Defendants Marquand and SSEP object to the amended complaint claiming the allegations are within the prohibitions of the Negrete order and the statute of limitations expired because the allegations do not relate back to the original complaint under Fed. R. Civ. P. 15.  (Docket 42).

## DISCUSSION

Motions to amend pleadings are governed by Fed. R. Civ. P. 15.  That rule, as pertinent to this case, provides "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).

Leave to amend pleadings should be denied only "in those limited circumstances in which undue delay, bad faith on the part of the moving party, futility of the amendment, or unfair prejudice to the non-moving party can be demonstrated."  Roberson v. Hayti Police Department, 241 F.3d 992, 995 (8th Cir. 2001) (internal citations omitted).  "The burden of proof of prejudice is on the party opposing the amendment."  Id.  "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, [they] ought to be afforded an opportunity to test [their] claim on the merits."  Foman v. Davis, 371 U.S. 178, 182 (1962).

"[A] motion to amend should be denied on the merits 'only if it asserts clearly frivolous claims or defenses.' "  Becker v. University of Nebraska at

6

Omaha, 191 F.3d 904, 908 (8th Cir. 1999) (citing Gamma-10 Plastics, Inc. v. American President Lines, Ltd., 32 F.3d 1244, 1255 (8th Cir. 1994)). "Futility is a valid basis for denying leave to amend." United States ex rel. Roop v. Hypoguard USA, Inc., 559 F.3d 818, 822 (8th Cir. 2009). "A district court does not abuse its discretion in refusing to allow amendment of pleadings to change the theory of a case . . . and no valid reason is shown for the failure to present the new theory at an earlier time." Dairy Farmers of America, Inc. v. Travelers Insurance Company, 292 F.3d 567, 576 (8th Cir. 2002) (internal quotation marks omitted).

Defendants assert two grounds[2] as justification to deny plaintiffs' motion to file their amended complaint. Those grounds are: (1) the statute of limitations has expired; and (2) the relation back provisions of Fed. R. Civ. P. 15(c)(1)(B) do not save plaintiffs' claims from the statute of limitations. (Docket 42, pp. 2-3). Defendants filed a motion to dismiss the plaintiffs' original complaint. (Docket 40). The basis of that motion is the Negrete court order. (Docket 41). Because the relation back provisions of Rule 15(c)(1)(B) are significant in the analysis of the statute of limitations issue and the motion to dismiss, the applicability of Rule 15(c)(1)(B) will be addressed first.

---

[2]Defendants' brief also included a failure of the amended complaint to allege proper jurisdiction. (Docket 42, p. 5). Plaintiffs corrected this deficiency by the filing of the corrected amended complaint (Docket 44-1). See also footnote 1, *supra*.

7

1.  **Rule 15(c)(1)(B)**

Defendants argue the relation back provisions of Rule 15(c)(1)(B) are not applicable to plaintiffs' proposed amended complaint. (Docket 42, p. 3). This argument is divided into two subsections: first, the new claims are encompassed within the settlement agreement and are barred by the Negrete order; and second, if not included in the Negrete "released claims," the claims are separate, new claims to which Rule 15(c)(1)(B) does not apply. Id. at 3-5. These arguments will be separately addressed.

   A.  **THE NEGRETE COURT DECISION**

Judge Snyder's order specifically addressed Macks' claims relating to the financial advice given by Mr. Marquand concerning the Macks' home. At the show cause hearing held on September 13, 2010, Judge Snyder entered findings which are relevant to the current motion to amend plaintiffs' complaint. Among those findings were the following:

> 15.  Although not explicitly plead in the *Mack* Complaint, the Macks also allege that Marquand advised the Macks to transfer title of their home from their children to themselves, which advice resulted in damages to the Macks.
>
> 16.  Although not explicitly plead in the *Mack* Complaint, the Macks also allege that SSEP negligently supervised Marquand in connection with Marquand's advice to the Macks to transfer title of their home from their children to themselves, which advice resulted in damages to the Macks.
>
> 22.  Class Members such as the Macks are enjoined and barred from pursuing claims against OM agents such as Marquand and, by extension, SSEP, who were

8

> involved in the solicitation, purchase or sale of an OM Annuity, as defined in the Class Settlement Agreement, and as alleged in the Mack Litigation.
>
> 25. All of the Macks' allegations against Marquand and SSEP "concern, refer or relate to, or arise out of, in whole or in part, the offering of advice in any manner related to the Annuities or the design, marketing, solicitation and sale of the Annuities," with the exception of allegations regarding advice Marquand allegedly gave to the Macks regarding the Macks' home and allegations that SSEP negligently supervised Marquand in connection with advice that Marquand allegedly gave to the Macks regarding their home.
>
> 26. Accordingly, all of the Macks' claims against Marquand and SSEP were released as part of the Released Claims in the *Negrete* Class Settlement Agreement, <u>with the exception of allegations regarding advice</u> Marquand allegedly gave to the Macks regarding the Macks' home and allegations that SSEP negligently supervised Marquand in connection with advice that Marquand allegedly gave to the Macks regarding their home.

(Docket 36) (italics in original; emphasis added).  Based on those findings, Judge Snyder's order contained the following provisions:

> 1. The Macks are hereby permanently banned and enjoined from maintaining their claims asserted against OM in the *Mack* Litigation.
>
> 2. The Macks are hereby permanently barred and enjoined from maintaining their claims asserted against Marquand and SSEP in the *Mack* Litigation that "concern, refer or relate to, or arise out of, in whole or in part, the offering of advice in any manner related to the Annuities or the design, marketing, solicitation and sale of the Annuities."
>
> 3. Accordingly, the Macks are hereby permanently barred and enjoined from maintaining their claims

9

>   asserted against Marquand and SSEP in the *Mack* Litigation, <u>with the exception of allegations regarding advice Marquand allegedly gave to the Macks regarding the Macks' home and allegations that SSEP negligently supervised Marquand in connection with advice that Marquand allegedly gave to the Macks regarding their home</u>.

Id. (italics in original; emphasis added).

The record is clear that Judge Snyder did not find the Macks' home issues included within the class settlement in Negrete. The Macks' home allegations did not "concern, refer or relate to, or arise out of, in whole or in part, the offering of advice in any manner related to the Annuities or the design, marketing, solicitation and sale of the Annuities. . . ." See Dockets 22-5, p. 58 ¶ 2(b), and 36, p. 8 ¶ 25. This court finds Macks' home allegations are not encompassed within the Negrete settlement agreement and order.

**B.   SEPARATE NEW CLAIMS**

Rule 15(c) provides, in relevant part, the following:

(1)   When an Amendment Relates Back. An amendment to a pleading relates back to the date of the original pleading when:
. . .
(B)   the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading; . . . .

Fed. R. Civ. P. 15(c)(1)(B). "[I]f plaintiff attempts to allege an entirely different transaction by amendment, Rule 15(c)(1)(B) will not authorize

relation back." 6A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure, § 1497 (2010). "For example, amendments alleging the separate publication of a libelous statement, the breach of an independent contract, the infringement of a different patent, or even a separate violation of the same statute may be subject to the defense of statute of limitations because of a failure to meet the transaction standard." Id. "On the other hand, amendments that merely . . . expand or modify the facts alleged in the earlier pleading meet the Rule 15(c)(1)(B) test and will relate back." Id.

"Because the rationale of the relation-back rule is to ameliorate the effect of the statute of limitations, rather than to promote the joinder of claims . . . , the standard for determining whether the amendments qualify under Rule 15(c) is not simply an identity of transaction test. Although not expressly mentioned in the rule, the courts also inquire into whether the opposing party has been put on notice regarding the claim . . . raised by the amended pleading." Id. "[A] failure of notice will prevent relation back." Id.

"To say that notice is key does not answer the question what level of notice is sufficient . . . . It has been suggested that the requisite notice must be given by the content of the original pleadings. Other cases have taken a broader view and have held that it is sufficient if the opposing party was made aware of the matters to be raised by the amendment from sources other than the pleadings. This position seems sound since it is unwise to

place undue emphasis on the particular way in which notice is received." Id. "[T]he better approach is to determine whether the adverse party, viewed as a reasonably prudent person, ought to have been able to anticipate or should have expected that the character of the originally pleaded claim might be altered or that other aspects of the conduct, transaction, or occurrence set forth in the original pleading might be called into question." Id.

A number of cases are helpful in analyzing the relation back provisions of Rule 15(c)(1)(B). See Slayton v. American Express Company, 460 F.3d 215 (2d Cir. 2006); Belmont Commons, L.L.C. v. Axis Surplus Insurance Company, 569 F. Supp. 2d 637 ( E.D. La. 2008); Ruta v. Delta Airlines, Inc., 322 F. Supp. 2d 391 (S.D. N.Y. 2004); and Pucci v. Litwin, 828 F. Supp. 1285 (N.D. Ill. 1993).

In Slayton, plaintiffs' original class action complaint asserted claims related to "high-yield, high-risk instruments such as below-investment-grade bonds–popularly termed 'junk bonds'–and collateralized debt obligations ("CDOs")." Slayton, 460 F.3d at p. 219.

> The [original] complaint alleged three material misstatements and/or omissions of material fact: (i) "failing to disclose that [Amex] had invested in a risky portfolio of high-yield or 'junk' bonds that carried the potential for substantial losses if default rates in the junk bond market increased"; (ii) failing to disclose the true extent of Amex's total exposure as a result of the risky portfolio after Amex wrote down its junk bond portfolio by $182 million in April 2001; and (iii) "failing to disclose that [Amex] was

> taking a substantial and unnecessary risk by investing in high-yield securities involving complex risk factors that [Amex] management and personnel did not fully comprehend."

Id. at 220. "These allegations formed the basis of claims for damages asserted under Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), Section 20(a) of the Exchange Act, 15 U.S.C. § 78t (a), and common law fraud." Id.

The amended complaint in Slayton "set out 'four primary misrepresentations or omissions of material fact,' namely that Amex: '(1) misrepresented Amex's high-yield investments as conservative when, in fact, they were high-risk; (2) concealed the extent of Amex's high-yield exposure; (3) failed to disclose the lack of risk management controls; and (4) failed to disclose the lack of proper valuation methods, and the fact that Amex's accounting was not in accordance with GAAP ['Generally Accepted Accounting Principles'].' " Id. at 221.

> The amended complaint added details not present in the original complaint, . . . . First, because so much of AEFA's portfolio consisted of high-yield investments–ten to twelve percent–there was a need to monitor these investments closely in order to determine current value and assess their risks accurately. . . . Second, the suspect valuation methods and lack of risk controls caused Amex to misrepresent its high-yield, high-risk investments as conservative and thereby to conceal the extent of its high-risk exposure. . . . Third, the amended complaint enumerated specific departures from GAAP in Amex's valuation techniques that led to a failure to account for impairments in the value and to its disregard for adverse events impacting the high-yield market– e.g., failing to specify the probabilities of losses in high-yield investments and failing to take a provision of losses in its high-yield investments in interim financial statements.

Id. at 221-22.

The Slayton court determined "the relation back issue is more analogous to a dismissal on the pleadings than a balancing of factors involving the conduct of a lawsuit. If facts provable under the amended complaint arose out of the conduct alleged in the original complaint, relation back is mandatory." Id. at 227. "Under Rule 15, the 'central inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading.' . . . Where the amended complaint does not allege a new claim but renders prior allegations more definite and precise, relation back occurs." Id. at 228 (internal citation omitted).

> [W]here an initial complaint alleges a 'basic scheme' of defrauding investors by misrepresenting earnings and profitability, an allegation of accounts receivable manipulation in an amended complaint will relate back because it is a 'natural offshoot' of that scheme. . . . And where an initial complaint alleges 'inadequate internal controls' leading to overstatement of accounts receivable, a defendant is on notice of a claim in an amended complaint that it improperly recognized revenues and failed to establish sufficient reserves for doubtful accounts in violation of GAAP and industry standards. . . . In contrast, even where an amended complaint tracks the legal theory of the first complaint, claims that are based on an 'entirely distinct set' of factual allegations will not relate back.

Id. at 228 (internal citations omitted).

The Slayton court concluded "that [plaintiffs'] allegation in the amended complaint that Amex failed to disclose the lack of proper valuation

14

methods and non-compliance with GAAP relates back to the original complaint. . . .[T]he allegations in the amended complaint that Amex used faulty accounting and valuation techniques simply provide a more detailed description of allegations made in the original complaint.  Moreover, all of these allegations–both in the amended and original complaints–arise out of the same set of operative facts." Id. at 229.  "Finally, the original complaint alleged that Amex misstated and/or omitted material facts in its filings with the SEC in violation of SEC regulations requiring accurate representations of Amex's operations and financial conditions.  Although these were very general allegations, the assertions in the amended complaint that some of these misstatements and/or omissions relate to valuation and accounting irregularities simply delineate with more detail those general allegations." Id.

  Plaintiff's claim in Belmont originally related to "the Hurricane Katrina insurance claim . . . ." Belmont, 569 F. Supp. 2d at p. 638.  The amended complaint sought to include a claim the defendant insurance agent failed to provide "flood excess coverage." Id. at 638-39.  "The amendment added a claim for additional damages for failure to procure enough flood insurance arising out of the same transaction or occurrence as the allegations in the original complaint.  The original complaint alleges that [the insurance agent] breached its duties and obligations to [plaintiff] which caused damages.  The

amended complaint adds the flood excess claim as a [sic] additional basis for the breach of agent duty claim . . . ." Id. at 644.  "The same general facts and circumstances that deal with procuring insurance that was in effect at the time of Hurricane Katrina which are at issue with the . . . surplus policy are also at issue with the flood policy. . . . Accordingly, the Court finds the amendment relates back."  Id.

In Ruta, the plaintiff's original complaint, among other claims, asserted the tort claim of slander.  Ruta, 322 F. Supp. 2d at 403.  The allegation was that a flight attendant, in the front of other passengers, declared that Ruta was intoxicated, a statement which Ruta claimed was "false and defamatory."  Id. at 404.  In her proposed amended complaint, Ruta's allegation was that the flight attendant falsely claimed that plaintiff "kicked him as he walked down the aisle of the airplane."  Id.

The Ruta court concluded that "despite the fact that Ruta did not plead the 'kicking' remark in her original complaint, those words clearly arise from the same transaction and same core set of operative facts as [the flight attendant's] 'intoxication' statement."  Id.  "The facts alleged in Plaintiff's original complaint provided sufficient notice to Defendant that any defamatory statements made by [the flight attendant] arising from his interaction with Plaintiff on the airplane would be subject to litigation, and therefore relate back to the original complaint."  Id. at 405.  Based on this analysis, the court granted leave to amend plaintiff's complaint.  Id.

In Pucci, the district court was faced with an earlier amended complaint which alleged a number of violations of federal laws relating to plaintiffs' investment in a real estate tax shelter. Pucci, 828 F. Supp. at pp. 1287-88. Additional claims of "breach of fiduciary duty . . . ; negligent misrepresentation and malpractice . . . ; consumer fraud and deceptive business practices . . . and constructive trust . . . ." were also pled. Id. at 1288. In the second amended complaint, plaintiffs sought to add a "civil RICO[3] claim," based on other counts within the complaint, and separately alleged "seven 'coal mining schemes' . . . ." Id. at 1296. Defendants argued these "coal mining investments . . . [were] new because none of the RICO allegations relating to the coal mining investments appeared [in either the original complaint or the first amended complaint]". Id. The court allowed the amendment to relate back to the original complaint.

> Pleading is no longer a formalistic game. Rule 15(c) allows relation back if the actions described in the amended pleading "arose out of the conduct . . . *attempted to be set forth* in the original pleading. . . ." This rule is to be liberally construed. Although the allegations involving the coal mining transactions are new, the court concludes that the new allegations can be characterized as the same conduct, transaction or occurrence as that attempted to be set forth in the previous complaint. The original complaint and the First Amended complaint involved the alleged inducement of investors into a fraudulent investment scheme by defendants . . . . So do the new allegations . . . involving the coal deals.

---

[3]Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-68.

> Accordingly, [the new RICO count] relates back to the date of filing of the original complaint . . . .

Id. (emphasis in original).

The court finds the Macks' home allegations are similar to the amended allegations in Slayton, Belmont, Ruta, and Pucci. The advice allegedly given by Mr. Marquand to the elder Macks concerning the Macks' home allegations occurred during the same time frame as the discussion of the annuities investments. But the Macks' home allegations are separate and divisible from the annuities investments discussions. The original complaint against Mr. Marquand and SSEP asserted claims for negligence, undue influence, breach of fiduciary duty, practicing law without a license, breach of professional responsibilities, intentional infliction of emotional distress, negligent supervision, fraud and deceit, and civil conspiracy. (Docket 1-1). These claims all focused on the relationship of Mr. Marquand and his company SSEP with the elder Macks. The Macks' home allegations arose out of the financial consultant-client relationship occurring during the time frame of the original complaint.

The original complaint alleged a "basic scheme" of negligence, fraud and deceit, and the Macks' home allegations are a "natural offshoot of that scheme." Slayton, 460 F.3d at 228. "[A]ll of these allegations–both in the amended and original complaints–arise out of the same set of operative facts." Id. at 229. The Macks' home allegations "clearly arise from the same transaction and same core set of operative facts" and the allegations of the original complaint "provided sufficient notice" to the defendants that any

financial shenanigans "would be subject to litigation." Ruta, 322 F. Supp. 2d at 405. "Although the [Macks' home allegations] are new, . . . the new allegations can be characterized as the same conduct, transaction or occurrence as that attempted to be set forth in the previous complaint." Pucci, 828 F. Supp. at pp. 1296. To allow the amendment at this stage would not create "undue prejudice" to defendants. Foman, 371 U.S. at 182.

The Macks' home allegations are not "clearly frivolous claims." Becker, 191 F.3d at 908. Plaintiffs "ought to be afforded an opportunity to test [their] claim on the merits." Foman, 371 U.S. at 182. The court finds the Macks' home allegations relate back to the same "conduct, transaction, or occurrence set out . . . in the original [complaint]." Fed. R. Civ. P. 15(c)(1)(B).

## 2.   STATUTE OF LIMITATIONS

Because of the court's decision under Rule 15(c)(1)(B), defendants' resistance to the amended complaint on the statute of limitations is moot.

### ORDER

Based on the above analysis, it is hereby

ORDERED that plaintiffs' motion to amend the complaint (Docket 38) is granted.

IT IS FURTHER ORDERED that plaintiffs' amended complaint (Docket 44-1) shall be filed with the Clerk of Court and served on defendants.

IT IS FURTHER ORDERED that defendants' motion to dismiss (Docket 40) is denied.

IT IS FURTHER ORDERED that pursuant to Fed. R. Civ. P. 15(a)(3) the defendants shall file their answer to the amended complaint within fourteen (14) days after service.

IT IS FURTHER ORDERED that within fourteen (14) days after the filing of defendants' answer, the parties shall confer and recommend to the court a modified schedule for completion of pretrial discovery and related matters.

Dated September 28, 2011.

> BY THE COURT:
> /s/ *Jeffrey L. Viken*
> JEFFREY L. VIKEN
> UNITED STATES DISTRICT JUDGE